## THE T. W. SNOOK.[1]

### GRISWOLD et al. v. THE T. W. SNOOK.

*(District Court, N. D. Illinois.   October 19, 1891.)*

COLLISION BETWEEN STEAMER AND TOW.
   A steamer going up the Chicago river passed a canal-boat propeller going down stream, just at the lower entrance to a draw 50 feet wide, and struck a canal-boat which was being towed by the propeller. The propeller had signaled the steamer to stop below the draw, but the latter had paid no attention to the signal. The canal-boat was visible from the steamer before the latter reached the propeller. The canal-boat was at the proper side of the draw, leaving ample room for the steamer to pass between her and the bridge. *Held*, that the steamer was responsible for the collision.

In Admiralty.   Libel by Guy C. Griswold and others against the propeller T. W. Snook, for damages caused by a collision.

*Charles E. Kremer*, for libelant.

*H. W. McGee*, for respondent.

BLODGETT, District Judge.   By the libel in this case libelant seeks to recover the damages sustained by him, as owner of the canal-boat Georgia, by reason of a collision which occurred upon the waters of the south branch of the Chicago river, on or about the 9th day of September, 1887, between the Snook and the Georgia, whereby the Georgia was sunk.   The proof shows that the canal propeller City of Henry was proceeding down Chicago river about 10 o'clock in the morning of the day the collision occurred, with the canal-boats Georgia, Illadore, and Onward in tow in the order named.   That about the time the Henry passed through the Ft. Wayne railroad bridge, she sounded a long single blast of her whistle, and at about that time the Snook was coming up the river, and just passing through the east draw of the Sixteenth-Street bridge.   The work of constructing the new bridge was in progress at Eighteenth street, and the west draw of the bridge at that point was obstructed by scows, dredges, and other apparatus connected with the construction of a new bridge, so that vessels passing up and down the river were obliged to pass through the east draw of the Eighteenth-Street bridge.   When the Henry was about 200 feet—or between 100 and 200 feet—above the entrance into the Eighteenth-Street draw, she sounded four blasts of her whistle, to indicate danger to the Snook, and request the Snook to stop, or "hold on," as the witness expressed it.   The Snook disregarded these signals, which were repeated at least three times, and came on with no perceptible abatement of her speed until she passed the Henry just at the lower entrance to the Eighteenth-Street draw.   As the propellers were approaching each other, the Henry blew one blast of her whistle, to indicate that she would pass on the port side of the Snook, and the Snook responded with a single blast, indicating that she would pass on the port side of the

[1] Reported by Louis Boisot, Jr., Esq., of the Chicago bar.

Henry. The Henry did pass close to the east bank or shore of the river at a very slow rate of speed, without having wholly stopped her wheel, and the Snook passed on up the river, and struck the bow of the Georgia a severe blow, which caused her to sink almost immediately.

I think the fault for this collision lies wholly with the Snook. The Snook had ample opportunity to know, and must be charged with knowledge, of the approach of the City of Henry with tows. It is true, the officers in charge of the Snook say they did not see the canal-boats, but the characteristics of a canal-boat propeller or tow-boat are so different from those of the ordinary river boats that the experienced captain of the Snook must have anticipated that the canal propeller had canal-boats in tow, and before he got around the point and was abreast of the Henry the canal-boats were in plain sight of him, strung out the length of their tow-lines astern of the Henry. There was at this time ample opportunity for the Snook to have stopped, and, therefore, have avoided the collision; but I am satisfied that the Snook, while she slowed up her speed to some extent, did not stop, and was moving upward when she came in contact with the Georgia. It is possible, as the witnesses for the defendant say, that the Georgia was also moving, but the Georgia was where she had a right to be; she was clear over on the east side of the draw, leaving ample room for the Snook to past between the canal-boats and the protection piles of the bridge,—the draw being over 50 feet wide at this point,—and the proof showing that the Georgia was running so close to the dock or piling upon the east side of the draw that the men could have stepped readily ashore from her deck onto the dock. The Snook therefore, was blamable in not stopping below the draw until these canal-boats had passed clear through. The Snook was going up the river, and could more readily have stopped than the canal-boats could stop. In fact, as the proof shows, with the long tow-lines which are used in towing canal-boats, as well upon the river as on the canal, it is impossible for the tug having them in tow to stop their headway, and this fact must have been well known to those in charge of the Snook. Hence, knowing that he was to meet and pass these canal-boats, the master of the Snook should have stopped his boat, and waited until they had passed through the draw, before he attempted to pass through; or, at least, if he did not do that, should have kept so far over to starboard as to have avoided any collision or contact with them. For these reasons I think the Snook is at fault, as charged in the libel, and a decree will be entered adjudging the Snook liable for the damages.